The Honorable Court is now in session. Good afternoon everyone, before proceeding with the argument on behalf of all of the judges of the court and not merely the panel appearing earlier here in this courtroom, I want to acknowledge that our court is honored by the presence of a number of distinguished judges from the patent court in Seoul, Korea, so welcome to our visitors. We'll hear our argument now in the case of Uniloc USA v. Microsoft, Appeal 1121 from 2008. Counsel? Thank you, Your Honor. It's Paul Hayes, Your Honor, for the appellate Uniloc. There's two claims at issue, so that we're clear here, 12 and 19, and the error is the district court's finding of fact as opposed on summary judgment, on material disputed facts. And all I'm going to do, I'll be relatively brief, because the court found that the MD5, which is a device, let's say this, might qualify as a licensing unique ID, meaning the output of that algorithm is sufficient for the jury to find that it's an ID. But what the court did say, however, is you don't infringe because the same algorithm, namely the MD5, or there's another one in a different product, SH1, is not found on both sides, and both sides means on the Microsoft side and on the user side. Let me interrupt just briefly for a technical inquiry. In the briefing and in the appendices, a lot of materials were designated as confidential, a vast amount of material designated as confidential, including details with respect to some of these algorithms. And perhaps I can inquire of counsel the extent to which we are constrained in terms of our discussion here in court and in terms of any opinion that we may have later on. We didn't designate it, Microsoft did, but I don't think for the purposes of this appeal I'm going to get into the, shall we say, the nits and grits of the algorithms. All we're doing is getting into the, quote, identity of them, if that's okay. Perhaps Microsoft's counsel can shed some light on this. Just briefly, Your Honor, thank you and I appreciate the opportunity. The identity of which hash is used in which product is confidential. The details of the hashes aren't necessarily, I mean, the hashes are known to people in other jurisdictions for other purposes. What is redacted is which product uses which hash and how it uses the hash. So merely mentioning MD5, that's okay as long as it's not linked to a specific product. Okay. I mean, one thing we should be clear is MD5, Judge, is used in, let's say, product X and SHA-1 is used in product Y. And we won't, the brief tells you which is which, but that doesn't really matter. Thank you. Okay. Now the bottom line is that we submitted an abundance of evidence that indeed these algorithms are on both sides, exactly opposite to what the district court found for no infringement. And I submitted an abundance of evidence that not only are they on both sides, but the output is matched. Now what is the evidence, because I understand we're dealing in specifics here, Klausner is our expert, declaration A2789. At A2789, you will find that, I don't have to read it, but you will find that indeed he says that they're on both sides and they are indeed compared. More significantly, if we go to A1188, that's the declaration of their own person, Mr. Hughes, who designed this thing. And what does he say in paragraph 25? What page was that? This is A1188, I believe. Right. And if you look at paragraph 25, he spells it out in spades, that they are on both sides of the equation, so to speak, and that the outputs are indeed matched. Well, let's suppose that your argument persuades the court. What about the further arguments made starting at page 45 of the red brief by the Microsoft lawyers that there were claim construction errors by the district court, which if corrected would plainly require affirmance of the non-infringement summary judgment? Right. First, I don't agree that there's claim construction errors. And secondly, with respect to the proposed claim construction error, even if it were true that in fact their suggestion, there's more than ample evidence of record that would support, allow me to get to the jury. Now if they win on all... Just a minute. Yeah, sure. Is it disputed whether the Microsoft system uses information that's unique to the person as opposed to the platform? Microsoft, they took the position that the Microsoft... I'm not asking about their position. I'm asking a factual question, which is whether you dispute that their systems use no information that's personal to the licensee as opposed to the platform, the computer, the licensee is working on. I would dispute that. I mean, their system uses, to explain what their system does, their system does precisely what the patented system does. They use the number that is on the disk that you get. No, no, no. You're going off the point I'm asking about. Maybe I'm not understanding it. Well, maybe I didn't ask it clearly enough. Microsoft argues in the red brief about the claim construction and alleges an error in one claim construction having to do with unique identification respecting the licensee, and complains that the construction was incomplete or misleading or at least ambiguous in not distinguishing sharply enough between whether the information is associated with the user's machine or the user as a person. And Microsoft claims that it's undisputed that its systems use no personal information, no social security number, no credit card number, no telephone number, no residence address, et cetera, any other type of personal information. I'm just trying to find out from you whether you agree that the Microsoft systems don't use personal information as I've just defined it. I do not agree with that at all. What personal information do they use? The information that, in fact, they use is the number that is on the disk that is provided to the person who buys it, which is personal. You're not listening to me. I'm defining personal to mean something like a credit card or a social security number or a residence address or a telephone number or something like that that could be said to be associated uniquely with the person of the user. I agree that they don't use, for example, social security numbers or that. Do they use anything else that would fit the definition I just gave you of personal? Absolutely. They use the number that is provided on the disk sold to the individual who buys that disk, which is personal to him. Why is that personal to him? If I buy a disk and I give it to Judge Clevenger, the disk has the same number on it that it had when I bought it. When you buy the disk, that disk is personal to you. The point is, you can't give it to Judge Clevenger because the whole idea is, in fact, that's casual copying that we're talking about here. We submitted a host of Microsoft documents saying... I think what we're disagreeing about is entirely semantic. You want to call that personal information, and I'm defining it as not personal information. We aren't going to get anywhere because we're using different definitions. Right. If you say that the number on the disk is not personal information... But I already did say. Right. Because it's not like my social security numbers. Right. Then, in fact, they're not using personal information. Our position was, with the court who adopted our position, based on, by the way, numerous Microsoft contemporaneous documents, identifying that number on the disk as personal to the user, admitting it. That claim construction that Microsoft proposed was almost opposite, or shall we say, inconsistent with its own contemporaneous documents, but it's also inconsistent with the pattern. Because if you go into the pattern and take a look at what numbers are used to do this magic, so to speak, one of the examples in the pattern is using, indeed, the number on the disk. The pattern discloses that. For what? For the exact same purpose for which Microsoft uses it and for what we do. Here's how it works. You take the number on the disk, and that, we say, is personal. We say it is to compare. That's obviously within the ambit of the claim. It's disclosed in the pattern. Then, the key, so to speak, to the invention, if there be keys, so to speak, is that then the computer in the user, say, Judge Lin's computer, has a number on it. It will search the software that is provided to Judge Lin, will search out his computer, and it has all different little components here, there, and everywhere that have serial numbers on them. It takes that number, it takes a whole bunch of these, combines them all together, and then combines it with the serial number on the box. The reason this is all about is, I mean, in this opinion, the judge talks about, in the first seven pages, of something like piracy and somehow stealing it over the Internet. That has nothing to do with this pattern. This pattern is casual copying. It's, for example, I sell it to you, you then give it to your buddy, your buddy then loads it on his computer, and as a result of loading it on his computer, now he's deprived Microsoft and Unilock, etc., of the sale. That's really important, and that's like a $4 billion problem. Now, that's how it all works, to answer your question, and if you look at, on your personal, whether that number would qualify as personal, as the court explained, it's disclosed in the patent spec, using the number, it's disclosed in Fig. 4 of the patent, and Microsoft's own contemporaneous documents characterize that number on that thing, on the disk, as information referring to the customer, a fingerprint of the customer. And I suggest the court go to, for that question, A2634, A2637, A2638. Mr. Hayes, I'm a little bit surprised at your response to Chief Judge Michel's question, because I, as I understand your response, you're in effect saying that, well, the license unique ID in this system does, in fact, have personal information. Personal information can include the number that's on the disk, that's personally owned by someone. It can include, yeah, sure, it can include that number. I thought your response was going to be that, well, the claim broadly says, licensee unique ID, and referring to the specification, the intrinsic record, there's nothing to suggest that that doesn't mean, broadly, something unique that can or cannot, doesn't necessarily have to have personal information, but could have any different types of information, as long as it's unique, and therefore, the district court's construction was correct. It was correct, but the question I was answering directly, he was asking me directly on definitions or different things on personal information. I just wanted to make sure that that was ... Your argument is that the district court's claim construction was correct, because it doesn't need to be interpreted as requiring personal information. Yes, it's not in the claim, it's disclosed in the spec, the notion of using the number is supported in the spec. The next thing that, from my point of view, in the sense of we deserve a trial, at least here, is not only have I given to you the specifics, identifying that these algorithms are on both sides and the output is compared, through Klausner, their own person, we relied and directed the court to Microsoft's own patent describing their product. All you have to do is take a look at Fig. 2 of their patent, and it has the algorithms on both sides, and to boot, this is the sort of a little bizarre twist, is Microsoft sent out what they call requests for material, undisputed questions of fact. Undisputed questions of fact 15 to 20 state, and asked us to not dispute, that indeed these algorithms are on both sides and matched. We agreed. In substance, the district court ignored all of that, and just frankly went off and did what it did to try to figure it out without looking at the record evidence. Now, with respect to claim 12, that's on point. The court said, I looked at Klausner's expert report for no evidence that the registration system is replicated at the registration authority. And he says, I looked at the report, pages 92 to 107, we didn't cite, and he said we cited to that, we didn't cite to the report at page 92 to 107. We cited to Klausner's claim charts explicitly. Now we pointed out in our brief that in the brief to the court was A2367 is where we specifically tell the court to go to tab D, pages 107, et cetera, which is the claim chart. And if you go there and look at A2927, the first words out of Klausner's expert report is that it's replicated. The point is the court went to the wrong spot. So finally, what I would like to argue, I can't get into all these alternative theories of claim construction. I can tell you they represented to the court, they were very happy with the claim construction. Now apparently they're not happy, given the fact we got the evidence of record out on the table. With respect to the issue of recusal, we brought it because we have to. Recusal is something that a lawyer like me, practicing or whatever, is obligated to do on behalf of his client. The test is whether there's a mere appearance of partiality. I don't have to prove anybody's on the take. It's just a mere appearance. I don't think there's any serious dispute about the standard. There's no confusion on our part about the standard. We were instructed to treat the court and the clerk the same. I was told that I am not going to tell this judge, this judge is not going to let me tell him who he can use as a clerk. If I want to get rid of the clerk because he's hooked up with Microsoft, I got to go recuse the judge. The judge said that and so you reacted. So I did it. You've already used up all your time. So if there's something further that's new and different, you have to say it. I'll give you one minute to say it and we'll give you a few minutes of rebuttal as well. Okay. Well, then I'll just rest on the argument then in the brief on that judgment. No need to beat the horse. Thank you. We'll give you three minutes for rebuttal. Thank you, Your Honor. Thank you, Mr. Hayes. Mr. Schirkenbach. Good afternoon, Your Honor. Frank Schirkenbach of Fish and Richardson for Microsoft. Let me clarify the issue of whether the hashes are present and used on both sides. They are. Okay. So the entire first piece of that argument, all the evidence he cites is really sort of beside the point. The district court did make that small error in its opinion. The question is whether it matters and the answer is no, it doesn't. This is a case where, as you know from our briefs, the approach pursued by the plaintiff was to overwhelm the district court with many, many theories. In fact, we can't even agree on how many theories there were, eight theories, 12 theories. It really doesn't matter at this point. Are you conceding that you lose unless we adopt one of your alternative grounds of affirmation? No, not at all, Your Honor. Then you better explain why, even though he's right factually, summary judgment on that ground was nevertheless correct because it's not clear to me why that would be so. Okay. Let me do that. There are a number of reasons. The first is that even if you focus on the hashes being used on both sides, they have to produce a licensee unique ID, which has to be associated with the licensee. There's no question that that's the construction. That really comes back to the same argument of what the word associated means. Does it have to include personal information or can it include only other sorts of information like some number on the product? You can view them as two sides of the same coin, Your Honor, but with respect, I actually think they are different inquiries. Whether or not the license hash has information that is personal to a licensee, and by the way, there's no argument that it does. We're talking about a mathematical transformation of a number which represents the license. Because of course it's a hash, it's impossible by definition to get from the hash back to any of the constituent components. Even if Unilock argues that the product ID is personal to the user, it's not, but let's assume they get the benefit of the doubt. You can't get back to that piece of information from the hash. The hash absolutely has nothing to do with any particular user. In fact, they said in their brief that it serves an entirely different purpose, and it does. It's designed to ensure the integrity of the data during transport. I'm not sure I understand, though, the technology. The hash produces the license digest, is that right? Those two are synonymous. License digest and hash are synonymous terms for the same mathematical entity. Okay, and isn't that license digest a unique identifier for this particular license? It is unique to that license, yes. Isn't that license based on the inputting of the product key in conjunction with hardware information about the Qt computer it's working on? The license, yes, but not the license hash. But the license digest is simply a symbolic number that represents this license and only this license, which does contain that information. So perhaps I don't understand the technology fully. I'm not sure. Why don't you help me out there? Here's the difference. The license is composed of the product ID, the hardware ID, and the license ID. If you were looking at that entity, one could take apart the license and figure out what the pieces that are part of it. When it's hashed, all that goes away. The hash is an arbitrary number, large number, that is designed by its very nature. It is designed to prevent you from understanding or ever getting back to the pieces that go into it. And so they're in a situation of trying to persuade this court, because they never made the argument, by the way, to Judge Smith, that the license hash was associated with the licensee. They're trying to persuade you that it is. But isn't that the whole point, is generating something that is associated uniquely with someone who's authorized? But it's never associated with the licensee. See, that's the problem, Your Honor. The hash is not stored at the clearinghouse. The user has no idea what it is. It's not stored locally on the user's machine. It is only used to ensure the integrity of the transport of the license data from the clearinghouse to the user's machine. And this is, it's actually... It does so based on the fact that it is a number uniquely generated as reflective of someone who's authorized, right? I won't quarrel with the uniqueness part, but there's nothing connecting a particular hash to a particular licensee. Then how is it useful as a security key or code? It is useful because it's used as security for a completely different purpose. It doesn't have anything to do with authorizing the use of the software. It is used to ensure that the license that comes back to the user's computer, in fact, came from Microsoft. And the way I know that is I take that license hash, I take the same data on the computer side, which I have, I have the product ID, the hardware ID, I run it through the same hash, and I see if the hashes match. And if they match, then I know that I've got legitimate Microsoft license data that's been sent to me. But there's no... That's not because, oh, I know this hash is associated with some user. It has nothing to do with that. What I was going to say is it's ironic, actually... But it's authorized. It's genuine Microsoft software. That's the function, is to make sure that you're not going to download anything to someone who's not using authorized software. That ultimately what's being sent to you is coming from Microsoft. So it's both hashed and encrypted to be very sure that what the user is getting back comes from Microsoft. It's not to ensure that there's some linkage between what's coming from Microsoft and the user of that machine. Suppose the result of the algorithms that were identical on both sides was to actually send the license, and then there's some sort of line-by-line comparison, number-by-number, element-by-element of the actual licenses as opposed to the matching of these two numbers, the hash. Well, the license, you agreed, contained all the information we talked about, product key, hardware information about the computer. Is that right? Yes. Okay. So if it were the license, and that was the product of an algorithm, the creation of this license that existed on both... You know, it was happening simultaneously. The only issue I'm worried about is, is that license a unique product identifier then? Would that qualify? You told me to assume, you know, not to get to your unique argument about the unique license identifier not being personal, not exclude that, assume that you were losing on that. Would that license itself have satisfied? Okay. This gets to Judge Michelle's question. Put the uniqueness to one side. Is it associated with the licensing? There's two very different requirements. It has to be unique, has to be associated with the licensing. The answer is no. Microsoft never associates a license with a licensee. The user's machine never associates a license with a licensee. The pieces of this license are hardware. There's a product key, which is transformed into a product ID. There's a hardware ID, which is derived from the environment. But the product key, though, is that number on the back of the box. Yes, correct. Okay. Why isn't that associated with the licensee, since I assume that Microsoft would say the only person authorized to use that number on the back of the box is the licensee? Microsoft doesn't do that. And in fact, the record is undisputed on this. The clearinghouse stores the product ID and the hardware ID, and they are linked to the hardware. Microsoft has absolutely no idea who the licensee is. We don't know who buys the software. And in fact, this is not accidental. This is by design. We deliberately do not take any identifying information from users. In fact, Microsoft was in a lawsuit over this at one point. It's illegal in Europe to do that, for example. So there's lots of reasons Microsoft says, we don't want it, we don't ask for it, we don't use it. The only thing we know is a piece of software is either authorized to be used on a machine or it's not. To get back to Judge Michel's example, you give your software to Judge Clevenger. If that software, your machine to Judge Clevenger, Judge Clevenger can use it, happy day. There's absolutely no problem with that from Microsoft's perspective, and we don't know who's using it. Everyone on the court could use it. It's completely irrelevant. We have no visibility into the licensee. So there is no association. The third time, I'm going to try to get to this point. It's ironic that they are now so focused on the license hash because even their own expert never said that that hash was associated with the licensee. If you look at this record, you can look at Mr. Klausner's declarations anywhere. They can try to point you to it, and when they get up and reply, no one has ever said that the hash is associated with a licensee. So is it surprising that Judge Smith never even considered the hash a candidate licensee unique ID? No, it's not surprising at all. So when you read his opinion and he says, well, the only things that could possibly qualify based on what Unilock has even argued are the product ID, because they have this argument that the product key can be associated with the user. We think that's ridiculous. Judge Smith didn't buy it either, but he sees the argument, so he notes it in the opinion. And then he says, well, and then they have this argument that the computer can somehow be associated with the user. And so the hardware ID, which is derived from the computer, well, maybe that's a candidate licensee unique ID also. Nothing about the hash, and that's not an error. That was a deliberate decision because there is nothing in the record from Unilock ever saying that that's associated with the licensee. I'm sure you're going to say no, but just explain to me why. Why couldn't the hardware ID be uniquely associated with the licensee? Because the hardware is unique to that licensee's computer, right? So why isn't that sort of his social security number for all intents and purposes? In a theoretical system, it could be done that way. If you had a database that actually stored a person's hardware ID in association with their personal information, that might be true. We don't do that, and we go out of our way not to do that. What if Microsoft took the person's personal information, like credit card or all this other stuff, and transcribed it into some magic number that was unique to them? That number doesn't convey to anyone the actual underlying information that formed the basis of that number, but nonetheless, this unique number is, in fact, based upon all of these inputs. If the number, if that scrambled number can be matched to the user, that would qualify. Why? The claim doesn't require that, though. It doesn't require this back-matching, and I don't... It does, with all due respect. I mean, it has to be associated with the licensee. I mean, it has to mean something. Could that number possibly be associated with anyone else? Sure. How? In Microsoft's system, could that number be associated with anyone else when the basis for the inputs are entirely the product key and the hardware information from that person's computer? Well, first of all, we're talking about, with all due respect, a hypothetical, not Microsoft's system, because we don't take any user information of any kind and do anything with it. But in your hypothetical, if somebody other than Microsoft were to take this information in, create a hash of it or whatever, some other number, an association is something that's created because there is a link between information A and information B or entity B. Why is the social security number associated with you? Because the government has a database that says, you know, 029547639 is Judge Moore's social security number. That's why there's an association, not because in somebody's mind somewhere they could make an argument that, gee, you could argue that's associated with an entity. But isn't the serial number on my computer somehow associated with me? Doesn't that have certain attributes of identifying? I mean, again, it really comes back to from whose frame of reference we're referring to. The patent is about a remote location and a central location, or in Microsoft's case it's called a clearinghouse. We're talking about commercial software, distributing software. What matters is what does the copyright owner know about where its software is and who's using its software. So, again, to get back to your example, if the responsible people know that the serial number for your computer and they know it's your computer, yeah, that's associated with you. Isn't that what you're concerned about, that, you know, it's okay if that software is used on that computer, that's fine. But if it's used on some other computer, that's going to raise a red flag that maybe that's not authorized. Exactly. And that's exactly the way the Microsoft system works without any regard to whose computer it is, who's using it, whether they've paid for it, no idea. I mean, it is completely different than the patented system, in which the patented system, you don't have the rights to use the software until you pay your money. The whole activation process or validation process in the patent is designed to be a roadblock to you getting full rights to the software. You can't print, you can't save, you can't do all these things. Microsoft doesn't have that sort of system. You go buy Microsoft software, you own it. It's yours. You install it on your computer. They cited you to Mr. Klausner's technical tutorial, it's in the record, and it's accurate. It has the screenshots and what happens. You install it on your computer. You can use the software. You can choose to register or not. Completely separate process, optional process, alternate process. If you register, you can choose to give Microsoft your name and your email address and they'll send you product updates and that sort of thing. Has nothing to do with product activation. Completely separate process. Then at some point down the road, you choose to activate. And that's what this case is about, is the activation part. So if you look at the system sort of from the top down and what they're doing, they really could not be more different. If I could just get to the claim construction issue. I've got three seconds. I'll talk really fast. Judge Michelle, your question about was the claim construction wrong. We think it was. We think the judgment can and should be affirmed based on the record that was in front of the judge because there's no showing of an association between the hash and the licensee. But if nothing else, this claim has to require at least some personal information. Can you add a serial number from the platform and some embodiments? Sure. Can you add a hardware ID that's based on the actual components of a user's computer? Can you add that? Sure. You can combine other things with it. But ultimately, the uniqueness of the licensee unique ID, that phrase, has to derive in part from personal information. It's what this patent is. At its core, that's what this patent is about. Oh, I have 49 seconds. I guess I should ask if I have any other questions. I don't intend to address recusal unless the court has any questions about that. The court applied the proper standard. Let me just say this. There are two alternate arguments in the briefs. I won't repeat the arguments, but I want to direct you to them. One on Claim 12. One on Claim 19 that are independent bases for affirmance using the district court's claim construction. The one for Claim 12 is the requirement that the inputs to the system come from an intended licensee of the system. This goes back to at what point in Microsoft's system is the person actually licensed as opposed to at what point do they? And so that's an independent basis on why on Claim 12 we win. That's a temporal issue. The temporal issue. Absolutely. And by the way, on that one, they really had no response in their reply brief to that. And indeed, it's hard to see how they could because the facts supporting it are drawn straight from Mr. Klausner's own tutorial. It's not disputed at what point in the system a person becomes a licensee. On Claim 19, there is this means plus function issue, which we think is dispositive. And again, as to which they have very little response in their reply brief. The claim is means plus function. The structure has to be a summer or the equivalent. And in their brief, they say that everybody knows that summation means concatenation. And even if you take them at their word that you have to put certain pieces together in concatenated form, there's no evidence whatsoever that the license hash meets that definition. So unless there are any other questions, I'll yield my time. Thank you. Mr. Hayes. Just basically, we've said it all here in the brief. But the notion when we get back to this number that it's not associated. First of all, the word associate is not in the claim. I just direct the court to A2634, 2637, 2638, Microsoft's own contemporaneous documents, characterizing this number as a fingerprint of the customer. As characterizing this is information regarding the customer. A way to identify the customer, contrary to what my brother just said. Where does that appear? That appears at. No, no, I don't mean in the record. But in what sort of documents do those characterizations appear? These are Microsoft-generated documents that are distributed describing the product. Sales literature. Well, sales and technical literature. This isn't just puffing. It's not like a patent or a judgment on the court or something. I'm sorry, I didn't catch that. I mean, sales literature wouldn't compare with prosecution history, for example. Oh, no, no, of course not. The defined claim term. Right, right, of course not. My brother's basic claim construction is asking you to construe the claim to actually to construe the claim so that it doesn't even cover Fig 4 of the patent, which is a perverted embodiment, which we all know is not cricket, so to speak, for the most part. And with respect to the rest, I'll just rest. We've addressed all these alternative arguments in the briefing. All right. Thank you. Thank you both. Thank you. We'll take the appeal under advice. Yeah. Oh, of course, you don't.